## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOMMY L. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-cv-178-DWD |
| | ) | |
| DOUGLAS R. SCHLUTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Tommy L. Johnson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Hill Correctional Center, brings this action related to 42 U.S.C. § 1983 for alleged deprivations by reason of his transport to Shawnee Correctional Center ("Shawnee") from a court writ in Champaign, Illinois. Plaintiff claims Defendants violated his rights by drinking red wine vinegar to the point of intoxication, failing to secure his seatbelt, driving recklessly, and refusing him medical care after hitting a deer. (Doc. 36). He seeks compensatory and punitive damages, as well as injunctive relief. Defendants filed a timely Motion for Summary Judgment and Memorandum in Support. (Docs. 85, 86). Plaintiff responded to the Motion for Summary Judgment. (Docs. 95, 100). The matter is now ripe for review.

1

## Procedural History

Plaintiff filed a Complaint on January 28, 2022.[1]  (Doc. 1).  Upon initial review, the

Court identified five valid claims:

Claim 1:   Eighth Amendment deliberate indifference by Defendants Douglas R. Schluter and Andrew S. Causey for failing to buckle Plaintiff and for driving recklessly;

Claim 2:   Eighth Amendment failure to intervene by Defendants Douglas R. Schluter and Andrew S. Causey;

Claim 3:   Eighth Amendment deliberate indifference to a medical need against Defendants Douglas R. Schluter and Andrew S. Causey for refusing medical care;

Claim 4:   Eighth Amendment failure to supervise, intervene, or protect, against Defendant John S. Hobbs for his handling of the situation;

Claim 5:   Negligence against Defendant Andrew S. Causey for his driving on the return trip to the prison.

After review, all claims were allowed to proceed. (Doc. 8). Defendants timely

waived service of process and filed their Answer (Doc. 47). The case then proceeded to

merits discovery.

## Facts

The following relevant facts are recounted primarily from Plaintiff's Amended

Complaint (Doc. 36), with disputes between the parties noted where applicable.

---

[1] Plaintiff filed an Amended Complaint on August 10, 2022 (Doc. 36). The factual allegations in the Amended Complaint are the same as those in the original complaint, but the Amended Complaint substituted named parties Douglas R. Schluter, Andrew S. Causey, and John S. Hobbs for John Does 1-3, respectively, and contained demands for relief specific to the newly identified defendants. The Amended Complaint also named the Illinois Department of Corrections and Dawn Rightnowar as defendants, but failed to include any factual allegations against them, so they were terminated from the case (Doc. 44).

On November 4, 2021, Plaintiff was driven by Defendants Schluter and Causey to Champaign-Urbana, Illinois, for a court writ. (Doc. 36, p. 23). Defendant Schluter had a bottle of "Pomera Vinegar Red Wine," which Plaintiff claims was "not clear plain vinegar for salad." (*Id.* at 23-24). Plaintiff alleges Defendants Schluter and Causey poured the liquid into Styrofoam cups to drink. (*Id.* at 23).

After the court proceeding, Plaintiff alleges Defendants Schluter and Causey placed him back into the van without fastening his seatbelt. (*Id.* at 23). Plaintiff alleges Defendant Causey drove recklessly at 90 miles per hour. (*Id.* at 24). The van had a head-on collision with a deer. (*Id.*). The collision caused Plaintiff to hit his head on the roof and side window of the van, and his back slammed into the seat. (*Id.* at 25). Defendants allege that Defendant Causey exited the vehicle and checked on Plaintiff after the collision, finding him seat-belted in the vehicle. (Doc. 86, p. 2). Plaintiff indicated he was fine following the collision. (*Id.*). Defendant Causey reported the collision to Defendant Hobbs and informed him that the right headlight went out, and Defendant Hobbs advised that they continue to drive back to the prison. (*Id.* at 24). When the left headlight began to flicker or went out, Defendant Causey called Defendant Hobbs, and he again advised that they continue driving. (*Id.* at 26). Plaintiff alleges that the officers stopped at a liquor store and arranged for a back-up transport vehicle from Shawnee. (*Id.*). However, Defendants allege that they drove the remainder of the way to Shawnee in the transport van. (Doc. 86, p. 3).

Because of the collision, Plaintiff claims he sustained injuries to his right shoulder, head, neck, and back. (*Id.* at 27). Plaintiff also claims he has PTSD, and the collision caused

him to experience increased anxiety. (*Id.* at. 24-25). Plaintiff did not receive medical care at the time of the collision, but he saw a nurse upon returning to Shawnee, several hours later. (*Id.* at. 29).

As a result of the above events, Plaintiff alleges that Defendants Schluter and Causey's conduct violated his Eighth Amendment rights. (*Id.* at 27). He claims they should have known about his medical and mental health history and should have prevented one another from drinking and driving in a reckless manner. (*Id.*). He alleges that Defendant Causey's driving conduct was negligent. (*Id.*). He also alleges that all three Defendants violated his Eighth Amendment rights by endangering him. (*Id.* at 29). Plaintiff claims that Defendants' conduct violated prison policies, as well as state and federal law. (*Id.* at 28).

## Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024) (citations omitted). In determining a summary judgment motion, the Court views the facts in a light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). In general, the Court cannot resolve factual disputes on summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial." (internal quotation marks and citation omitted)).

On summary judgment, the moving party is responsible for informing the Court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden may be discharged if the moving party shows an absence of evidence to support the nonmoving party's case. *Id.* at 325. If the nonmoving party argues that a fact is in genuine dispute, then the party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party must allege specific facts, more than "mere conclusions and allegations." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003), *as amended* (May 22, 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Celotex,* 477 U.S. at 323-34). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 255 (emphasis in original).

## Deliberate Indifference

The Court first addresses Claims 1 and 3: Plaintiff's Eighth Amendment deliberate indifference allegations against Defendants Causey and Schluter.

A.      Claim 1

The Eighth Amendment's prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020). A prison official's deliberate indifference to an inmate's substantial risk of serious harm violates the Eighth Amendment. *Farmer*, 511 U.S. at 828. Liability for deliberate indifference requires recklessness, "something more than negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 826. Deliberate indifference has both an objective and subjective component. *Balsewicz*, 963 F.3d at 654.

First, the objective component requires an inmate to have been exposed to an objectively serious harm resulting in injury. *Id.* Second, the subjective prong requires a prisoner to show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to an inmate's health or safety. *Id.* (citing *Farmer,* 511 U.S. at 837-38; *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020)). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" for subjective knowledge to exist. *Farmer*, 511 U.S. at 837. "The subjective element requires more than negligence[,] and it approaches intentional wrongdoing." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (quotation marks omitted).

Plaintiff alleges that Defendants Causey and Schluter were deliberately indifferent to his health and safety by failing to secure his seatbelt in the transport van and by driving recklessly (Doc. 36, p. 8). Defendants dispute these allegations (Doc. 86, p. 8).

"Neither the Supreme Court nor [the Seventh Circuit] has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm." *Dale v. Agresta*, 771 F. App'x 659, 661 (7th Cir. 2019); *see also Williams v. Wis. Lock & Load Prisoner Transport, LLC*, No. 15-cv-8090, 2016 WL 4124292, at *3 (N.D. Ill. Aug. 3, 2016) ("In general, failure to secure a seatbelt, although unwise, is not a substantial risk of harm that rises to the level of a constitutional violation." (citation omitted)). As the Seventh Circuit has noted, "other circuits have concluded that, without reckless driving or other exacerbating circumstances, failing to seatbelt a shackled inmate does not pose a substantial risk of serious harm. *Dale*, 771 F. App'x at 661 (collecting cases). Therefore, Plaintiff cannot establish a genuine dispute surrounding Defendants' deliberate indifference unless he shows that Defendants, in addition to failing to seatbelt him, drove recklessly.

Plaintiff alleges several examples of Defendant Causey's reckless driving.  First, Plaintiff claims that Defendant Causey was "drinking red wine mix with vinegar, before the accident and seem to be under the Influence of Alcohol." (Doc. 100, p. 9).[2] Defendant Causey does not dispute that he used red wine vinegar on his sandwich for lunch that day, but states in his sworn declaration that he did not mix the red wine vinegar with alcohol, nor did he have any alcohol in the vehicle or ingest any that day. (Doc. 86-2, p.

---

[2] Notably, Plaintiff exclusively refers to the liquid in question inside quotation marks—*i.e.,* Plaintiff does not allege Defendants consumed wine, but that they consumed "wine." This distinction implies Plaintiff's awareness that Defendants were not consuming alcoholic beverages.

3). Similarly, Defendants Schluter and Hobbs aver that they neither saw Defendant Causey drink any alcohol nor believe he was under the influence of any substance at the time (Docs. 86-4, p. 2; 86-6, p. 2). Plaintiff offers no evidence that Defendant Causey was under the influence of alcohol beyond stating that "there is evidence that the Defendants admit he had a bottle of red wine vinegar." (Doc. 100, p. 13). Defendant Causey admits he did consume red wine vinegar that day, but Plaintiff's allegation that Defendant Causey's consumption of red wine vinegar rendered him intoxicated is plainly absurd. The Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998) (citing *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)); *see also Hruska v. Forest Pres. Dist. of Cook Cnty., Ill.*, No. 10-cv-7433, 2013 WL 1195699, at *8-9 (N.D. Ill. Mar. 21, 2013) ("These implausible inferences and unsupported speculation are insufficient to defeat summary judgment." (collecting cases)). Plaintiff's claim that Defendants drove under the influence of alcohol from consuming red wine vinegar is a factual impossibility, one that no reasonable jury could find. Accordingly, there is no genuine dispute that Defendants drove recklessly under the influence of alcohol.

Next, Plaintiff alleges that Defendant Causey was driving over the speed limit at 90 miles per hour, and if he had not been speeding, he would have been able to avoid the collision with the deer by slowing down or changing lanes. (Doc. 100, p. 9). Defendants Causey and Schluter, on the other hand, dispute that Defendant Causey was speeding. Defendants point to sworn affidavits and incident reports stating the collision was caused

8

by the deer running into the path of the van, and that although Defendant Causey may have swerved to avoid the deer, there were no incidents of reckless driving. (Docs. 86-2, p. 1; 86-3, p. 3; 86-4, p. 1-2; 86-5, p. 2). In his Response, Plaintiff states that "[t]here is evidence of speeding" because "all accidents on the highway & Interstate is cause from drivers speeding, not being cautious, paying Attention, Following the rules of the road." (Doc. 100, p. 13). Once again, Plaintiff's speculative statements, without specific citation to support from the record, are not enough to establish a genuine dispute of material fact. *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) ("[I]t is well-settled that 'conjecture alone cannot defeat a summary judgment motion.'" (quoting *Delapaz v. Richardson*, 634 F.3d 895, 901 (7th Cir. 2011)).

Even when construing the facts in the light most favorable to Plaintiff, any speeding by Defendants would amount to, at most, negligence, not deliberate indifference.[3] "Allegations of a public official driving too fast for the road conditions are grounded in negligence, not . . . recklessness." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996); *see also Jones v. Collins*, No. 05-cv-663, 2006 WL 1528882, at *2 (S.D. Ill. June 1, 2006) ("As for [Defendant]'s reckless driving or the failure to fasten seatbelt, these allegations present, at best, claims of negligence, but a defendant can never be held liable under §

---

[3] The Court notes that much of the case law for § 1983 claims of deliberate indifference due to reckless driving are brought under the Fourteenth Amendment. Such Fourteenth Amendment cases are applicable here, even though Plaintiff bring his claims under the Eighth Amendment, because the Seventh Circuit has held "that § 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999); *see also Medford v. Bonjack*, No. 17-CV-1014, 2018 WL 1071716, at *2 (S.D. Ill. Feb. 27, 2018) ("[T]he Seventh Circuit has 'found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" (citing *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)).

1983 for negligence." (citing *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes,* 64 F.3d 285, 290 (7th Cir. 1995)). The Seventh Circuit has held that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." *Hill*, 93 F.3d at 421. Plaintiff's claim that Defendants could have avoided colliding with the deer had they not been speeding, even if true, does not rise to the level of culpability required for deliberate indifference. *See Lisby v. Henderson*, 74 F.4th 470, 474 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 560, 217 L. Ed. 2d 298 (2024) (plaintiff failed to allege a constitutional violation under § 1983 where "[a]llegations of Officer Henderson's highway speeding and illegal lane change, when coupled with the allegation that he never saw [a pedestrian] before the fatal collision, d[id] not suggest that he disregarded extreme or obvious risks and was 'willing to let a fatal collision occur.'" (citing *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021)). The type of collision that occurred here, one involving a wild animal on the highway at night, is the kind of unpredictable event that is often unavoidable, even when observing all the rules of the road. Given these circumstances, no reasonable jury could find that Defendants Causey and Schluter were deliberately indifferent in their transportation of Plaintiff to Shawnee from the court writ or in the collision with the deer.

Next, the Court considers Plaintiff's claim that Defendants Causey and Schluter were deliberately indifferent to his serious medical needs.

B.      Claim 3

To succeed on an Eighth Amendment claim for deliberate indifference to a medical condition, a plaintiff must show (1) that his condition was objectively, sufficiently serious and (2) that the prison officials acted with a sufficiently culpable state of mind. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). A serious medical need, for purposes of the first prong, is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Foulker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Next, prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

It is undisputed that Defendants did not arrange for Plaintiff to receive medical treatment until they reached Shawnee, several hours after the collision occurred. (Doc. 100, p. 7). Because of this delay, Plaintiff claims Defendants Causey and Schluter were deliberately indifferent to his injuries from the collision. (Doc. 36, pp. 30-32).

A non-trivial delay in treating serious pain may support a claim of deliberate indifference. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). To demonstrate that delay caused a cognizable injury, an inmate must show that the delay either exacerbated

his injury or that it unnecessarily prolonged the pain. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021). In cases where prison officials delayed rather than denied treatment, the plaintiff must offer verifying medical evidence that the delay—rather than the underlying condition—caused some degree of harm. *Id.* at 749 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)).

As to the objective prong, Plaintiff alleges that, because of the collision, he sustained injuries to his head, neck, right shoulder, and back, and his anxiety rose to a "Level 10." (Doc. 36, pp. 24-25). He describes the pain as a level 9 or 10. (Docs. 100, p. 4). Severe pain can indicate a serious medical condition requiring treatment. *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (collecting cases). Yet, it is undisputed that, in the moments after the collision, Defendant Causey asked Plaintiff if he was "OK," and Plaintiff indicated he was fine. (Docs. 86, pp. 2-3; 100, pp. 4-5). When Plaintiff received treatment by a nurse at Shawnee, he complained of head and neck pain, but he was able to perform full range of motion with his head and neck, had no swelling, bumps, or discoloration, and his neuro checks were within normal limits. (Doc. 86-7, p. 1). The nurse prescribed him with 325 mg of acetaminophen to take as needed, but did not proceed with any other emergency treatment, suggesting that the nurse did not believe his condition was severe. (*Id.*).

However, assuming for the purposes of this analysis that Plaintiff's condition was objectively serious, he must still show that Defendants had a culpable state of mind. *Lee*, 533 F.3d at 509. This standard "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir.

2012). The question here is whether the brief delay from when the collision occurred to when Plaintiff received treatment demonstrates that Defendants were deliberately indifferent. The Court concludes it does not.

Defendants' decision to not seek immediate emergency medical care for Plaintiff does not rise to the level of deliberate indifference. "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in the prison environment." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). Plaintiff's condition, painful though it may have been, was not life-threatening. Prison officials are required to "'act responsibly under the circumstances that confront them' but are not required to act flawlessly." *Id.* at 511 (quoting *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004)). The Court cannot say that Defendants acted irresponsibly here. Although it took several hours to reach Shawnee, Defendants arranged for Plaintiff to receive medical treatment within approximately twenty minutes of arrival. (Doc. 86-7, p. 1).[4] Other courts have declined to find deliberate indifference in similar circumstances. *Knight v. Wiseman,* 590 F.3d 458, 466 (7th Cir. 2009) (a two-and-a-half hour delay in treatment of plaintiff's shoulder injury "was minimal and had no adverse consequences"); *Burton*, 805 F.3d at 785 (two-day delay in administering pain medication was not enough to show a culpable medical state for deliberate indifference); *Goods v. Navarro*, No. 09-cv-7406, 2012 WL 1021807, at *4 (N.D. Ill. Mar. 26, 2012) ("The choice to return to the jail, where Defendants knew medical

---

[4] Defendants claim that Parties arrived at Shawnee at approximately 10:13 p.m. (Doc. 86, p. 3). The Shawnee nurse's report states that Plaintiff was treated at 10:34 p.m. (Doc. 86-7, p. 1).

attention was available, without first providing Plaintiff with immediate medical assistance was not so egregious as to be deliberately indifferent."). Considering the above, Defendants' decision to wait for Plaintiff to receive treatment at Shawnee for his non-life-threatening injuries, where they knew immediate medical attention would be available to him, was not deliberately indifferent.

Accordingly, summary judgment is **GRANTED** for Defendants Causey and Schluter for Plaintiff on both deliberate indifference claims. **Claims 1 and 3 are DISMISSED, with prejudice.**

<u>**Failure to Intervene**</u>

The Court now turns to Plaintiff's failure to intervene claims.

**A.    Claim 2**

Plaintiff claims that, as both Defendants Causey and Schluter took turns driving the transport van, each is liable for failure to intervene in the other's reckless driving and driving while consuming red wine vinegar.

A bystander to a constitutional violation can be held liable under § 1983 for failure to intervene if a plaintiff can show that the officer (1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *accord Doxtator v. O'Brien*, 39 F.4th 852, 864-65 (7th Cir. 2022). In order to succeed on a failure to intervene claim, a plaintiff must establish an underlying constitutional violation. *Harper*, 400 F.3d at 1064 (citing *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004)). As discussed above, the Court found no genuine dispute of

material fact surrounding Plaintiff's Eighth Amendment claims that Defendants were deliberately indifferent. Without any underlying constitutional violation, there can be no failure to intervene claim against Defendants Causey and Schluter.

### B.    Claim 4

Plaintiff alleges that Defendant Hobbs failed to intervene, supervise, or protect Plaintiff by advising via phone call that Defendants Causey and Schluter drive the van back to Shawnee, despite knowing that the van's headlights were not working. (Doc. 36, pp. 32-33). Further, Defendant Hobbs allegedly failed to intervene, supervise, or protect Plaintiff by not arranging for Plaintiff to receive immediate medical care. (*Id.*).

Section 1983 "does not allow actions against individuals merely for their supervisory role of others." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)). A supervisor may be held liable for the conduct of their subordinates only if they were "personally involved in that conduct," *i.e.*, that they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *accord Purdue*, 928 F.3d at 664. Put another way, a supervisor must act "either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992-93 (citations omitted).

Plaintiff's allegations do not create a genuine dispute of material fact regarding Defendant Hobbs' alleged failure to intervene, supervise, or protect. It is undisputed that Defendant Causey notified Defendant Hobbs twice via phone call following the collision with the deer. (Docs. 86, p. 3; 100, p. 3). Defendant Hobbs was initially informed that the

15

van was drivable, though one of the headlights was out, and that Plaintiff was fine and not in need of medical attention. (Docs. 86, p. 3). When the van was approximately twenty minutes from Shawnee, Defendant Hobbs was informed that the headlights were either flickering or out entirely. (Docs. 36, p. 36; 86, p. 3). With this knowledge, Defendant Hobbs had no reason to suspect Plaintiff's constitutional rights were being violated (especially because, as the Court found above, none were violated). As far as Defendant Hobbs knew, the van was struck by a deer, but remained in drivable condition, and Plaintiff was fine. The two phone calls did not provide cause for Defendant Hobbs to request Plaintiff receive emergency medical care at the scene of the collision or to discipline Defendants Causey and Schluter. As such, no reasonable jury could conclude that Defendant Hobbs acted with deliberate, reckless indifference based on his directions to Defendants Causey and Schluter.

Accordingly, summary judgment is **GRANTED** for Defendants on the failure to intervene claims. Claims 2 and 4 are **DISMISSED, with prejudice.**

<u>Negligence</u>

Now**,** as Plaintiff's Eighth Amendment claims have been dismissed, the Court must decide whether to retain or relinquish supplemental jurisdiction over Plaintiff's remaining state law claim. 28 U.S.C. § 1367(c)(3).

### E.     Claim 5

Generally, when all federal claims in a case have been dismissed prior to trial, the district court should decline to exercise jurisdiction over any remaining state law claims. *Id.*; *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007). However, this rule is subject to

16

three recognized exceptions: (1) when the statute of limitations bars the refiling of the state law claim; (2) where substantial judicial resources have already been expended on the state law claim; and (3) when it is clearly apparent how the state law claim is to be decided. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007).

Here, there is not a concern regarding the statute of limitations because Illinois law provides that when a federal district court dismisses a state law claim for lack of jurisdiction, the plaintiff has the greater of one year or the remainder of the limitations period to refile the claim in Illinois state court. 735 ILCS 5/13-217; *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009). This includes a dismissal based on the decision to not exercise supplemental jurisdiction. *Tamburo v. Elite Auto Credit, Inc.*, No. 18-CV-03169, 2020 WL 2745984, at *5 n.1 (N.D. Ill. May 27, 2020) (citing *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 637 (Ill. App. Ct. 1997)). Further, although the parties have completed discovery, and judicial resources have been expended to some degree, the Court's reasoning with respect to Plaintiff's constitutional claims did not reach issues fully dispositive of Plaintiff's supplemental negligence claim. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Finally, the Court cannot say that the proper resolution of the Illinois negligence claim is absolutely clear. *Sharp*, 578 F.3d at 515.

For these reasons, the Court declines to exercise jurisdiction over Plaintiff's remaining state law negligence claim. Claim 5 is **DISMISSED, without prejudice.**

## Qualified Immunity

Defendants further assert they are entitled to summary judgment on the grounds of qualified immunity. Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is an affirmative defense, once a defendant invokes it, the burden shifts to the plaintiff to argue that it should not apply. *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020). On summary judgment, this court must decide (1) whether the facts that plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time. *Pearson v. Callaha*n, 555 U.S. 223, 232 (2009); *see also id.* at 236 (holding that courts may conduct these inquiries in either order).

The Court has already concluded that Defendants did not violate Plaintiff's constitutional rights in Claims 1 through 4. Accordingly, because there has been no violation of constitutional rights, the Court need not reach the issue of qualified immunity. *Mucha v. Village of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir. 2011) (Where there is no constitutional violation, defendants "do not require the additional protection of qualified immunity."); *see also Woodruff v. Mason*, 542 F.3d 545, 559 n.17 (7th Cir. 2008) ("Because there was no constitutional violation in this case, we do not reach the issue of qualified immunity." (citing *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003)).

**Disposition**

For the above-stated reasons, Defendants' Motion for Summary Judgment (Doc. 85) is **GRANTED IN PART**, as to Claims 1-4**.** Claims 1-4 are **DISMISSED, with prejudice.** Claim 5 is **DISMISSED, without prejudice**. The Clerk of the Court is **DIRECTED** to close the case and enter judgment accordingly.

**SO ORDERED.**

Dated: September 19, 2024

_____
DAVID W. DUGAN
U.S. District Judge

19